State vs. Diskin.

---

## No. 8676.

### THE STATE OF LOUISIANA VS. MILES DISKIN.

A new trial will not be granted on the ground of newly discovered evidence, where such evidence is designed merely to impeach the credibility of witnesses for the State, who testified at the trial, or, if it consists of rebutting evidence, still the new trial will not be allowed unless such evidence is sufficient to change the result, and could not by due diligence have been obtained at the trial.

Where a juror when examined on his *voir dire* declares that he has formed no opinion touching the guilt of the accused, that he knows nothing of the case, his competency thus shown will not be affected by proof of an inconsiderate remark, uttered a short time before he was called as a juror, and which, without explanation, might seem to denote a bias against the accused.

Where a party is indicted for murder, and convicted of manslaughter, the indictment, if filed within the year the killing took place, interrupts prescription for the latter offense.

APPEAL from the Criminal District Court for the Parish of Orleans. *Luzenberg*, J.

---

*J. C. Egan*, Attorney General, for the State, Appellee :

1. There is no law requiring the prosecution to conduct a case to suit the convenience of the defense.

2. A new trial will not be granted to enable a party to impeach a witness who testified on a former trial. State vs. John Fahey, 35 An. 1 ; 5 Mass. 261 ; 7 Tex. 69 ; 2 Carter, 435 ; 14 Mo. 348 ; 8 Gratt. 637 ; Graham and Waterman on New Trials, vol. 1, p. 1074-1077.

3. The following is not an expression of opinion as to the guilt or innocence of the accused ; and therefore the juror using it is not thereby disqualified from serving: "that if he should get on the jury in the murder case fixed for trial on that day, he would get a ticket to see him hanged."

4. Proof of the *corpus delicti* is a matter entirely within the province of the jury to decide upon. And this Court will not review the evidence made part of this bill of exceptions ; particularly when the Judge *a quo* asserts that it, the *corpus delicti*, was proven.

5. Sec. 986, R. S., does not provide that manslaughter shall not be punished after the lapse of one year after the offense has been made known to a public officer having power to direct prosecution. It says: "No person shall be prosecuted, tried or punished for any offense, wilful murder, arson, robbery, forgery and conterfeiting excepted, unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer having the power to direct the investigation or prosecution."

*W. L. Evans* for Defendant and Appellant:

1. Where testimony is offered at the trial which could not have been anticipated (and the defendant is taken by surprise) and consequently unable to explain or rebut it, a new trial will be granted if the court is satisfied that there has been no lack of diligence. 3 Grah. and Water. on New Trials, 2d ed., 952, 930, 960; Riley vs. State, 9 Humph. 646; Cutler vs. Rice, 14 Pick. 494.

2. A new trial will be granted on evidence discovered subsequent to the trial contradicting the testimony on which the verdict was rendered where the facts on which the witnesses founded themselves are falsified by affidavits produced. 1 Grah. and Water. on New Trials, 2d ed., 233.

3. Where a juror, on his examination, on his *voir dire* denies having any bias or prejudice whatever, one way or the other, and thereby induces defendant to accept him as a juror, and after the trial it is discovered that he was prejudiced and biased and had expressed it, a new trial ought to be granted.

4. Where there is a failure of proof upon a material point (the *corpus delicti*) a new trial ought to be granted. Where it appears from the record that there was no proof upon a material point it presents a question of law which this Court can pass upon. Davis vs. Spencer, 24 N. Y. Ct. Ap., 390; McCann vs. The People, 6 Park. C. C. 637.

The opinion of the Court was delivered by

TODD, J. The defendant was indicted for murder, convicted of manslaughter, and sentenced to imprisonment in the penitentiary for fifteen years, and has appealed.

He complains that there was error in overruling his motion for a new trial and motion in arrest of judgment.

### I.

The motion for a new trial contained the following grounds:

1. That upon the trial of this cause two witnesses were called by the State, who testified, in substance, that the accused stated to them on the night the homicide was committed, that he would kill John Driscoll (the deceased) as soon as he should see him. That the accused and his counsel were taken by surprise by this testimony; that it was not anticipated by them, and could not be, and they had no opportunity to contradict or rebut it. That due diligence had been used to ascertain the names of the witnesses for the State before the trial; and upon an examination of the clerk's office the day previous to the trial, the names of said witnesses were not found on the list of witnesses.

The affidavit of a person who declared that she was present at the time and place when and where the accused was said to have made said statement to the two witnesses, and who denied that such state-

ment was made, was annexed to the motion; and the affidavits of several others, impeaching the veracity of the said two State witnesses, were likewise annexed and made part of the motion.

It appears from this statement that the said testimony referred to was designed to impeach and discredit that of certain witnesses given on the trial of the cause.

It is well settled that newly discovered evidence of the character mentioned, that is merely designed to impeach the credibility of witnesses who had testified at the trial, affords no sufficient ground for a new trial. Graham and Waterman on New Trials, vol. 1, pp. 1074, 1077; State vs. Fahey, 35 An. 1, and authorities there cited.

If, however, we should consider the testimony of Mary Coggins, the witness who purports to have been present when the damaging statement was made by the accused, as not coming within the category of impeaching, but of rebutting testimony, then to give it the effect claimed for it, we must consider, first, whether it is sufficient to overthrow or outweigh the opposing testimony and to change the result of the trial; and secondly, whether by due diligence this testimony could not have been had at the trial.

The circumstance alone that it is the testimony of one witness, simply in denial of a fact sworn to by two witnesses, shows that it does not meet the first requirement; that is, it cannot be held sufficient to outweigh that of two witnesses and change the result of the trial.

As to whether there was proper diligence to produce this testimony on a previous trial, is a question which lies largely within the discretion of the Judge who presided at the trial. He has spoken on this point, as we find from the record.

In giving his reasons for refusing the new trial, he used the following language:

" As a matter of fact, the names of both these witnesses were called out aloud by the sheriff in open court on the morning of this trial, in the presence and hearing of the accused and of his counsel. He knew they were present as witnesses for the State. He does not pretend to deny that they were acquaintances of his—visiting acquaintances—and he should have been prepared then to have met anything they might say against him. Mary Coggins could have been sent for then, or at any time during the trial, to have stated what she knew."

Under these circumstances, we cannot say that the Judge's discretion was arbitrarily exercised in this instance, or that his conclusion was erroneous.

There is no law in this State requiring the names of witnesses for the prosecution to be placed in the indictment or posted in advance of

the trial, and we can well perceive that any such practice or requirement would, in many instances, but serve to defeat the ends of justice.

We have been pointed to authorities by the defendant's counsel, where new trials have been granted in cases of surprise, and where the testimony was unanticipated, but in those authorities the conditions as to the sufficiency of the new evidence to change the result and the question of diligence, is fully recognized and given controlling effect.

For these reasons we cannot give the force contended for to this ground of the motion.

2. The next ground relates to the alleged incompetency of one of the jurors who tried the case. Before the case was called for trial, this juror made an inconsiderate remark, to the effect, " that if he should get on the jury in the case fixed for trial on that day and the accused should be convicted, he would get a ticket to see him hanged."

Examined on his *voir dire* this juror said, "he had no knowledge of the case," " had neither formed nor expressed an opinion as to the guilt or innocence," " that he was not biased or prejudiced," and " no one had spoken to him about the case." These answers, given under the sanction of an oath, are certainly a better and safer test of the competency of the juror than the thoughtless remark referred to ; and it is not seriously contended such remark disqualified him. His idle talk constituted an impropriety, nothing more.

3. The next question, as presented and argued by the defendant's counsel, is the abstract one whether a party can be convicted where there is no proof of the *corpus delicti*. We do not, however, see the question in that light, or as he puts it. The record plainly shows that there *was* evidence introduced at the trial on this very important point. And the true question arising from the record is not whether, in the absence of all proof of the *corpus delicti*, the accused can be convicted, but rather, whether the proof administered was sufficient to establish this indispensable fact. This question, under our limited jurisdiction, we must decline to answer, since it would require us to review the verdict upon a pure question of fact, which we have no power to do.

The authorities cited by the counsel on this subject are not in point.

## II.

The motion in arrest of judgment presents the question only of the alleged prescription of the offense for which the accused was convicted. Quoting the exact language of the motion, the matter or point is thus. stated :

" The record shows that the offense, which was only manslaughter, from its inception, was committed on the 28th of April, 1881, more than one year before the verdict of manslaughter rendered herein, and that

7

no indictment or presentment for that offense has ever been found against the defendant, and that Section 986, R. S., provides that no person shall be punished for the offense of manslaughter unless the indictment or presentment for the same be found within one year next after the offense shall have been made known to a public officer having power to direct the prosecution."

The true meaning of Section 986, R. S., referred to is, that if the State remains silent and inactive, and fails or refuses to prosecute for one year those who had committed certain offenses, (among which is manslaughter) which are known to an officer charged with their prosecution and the parties have not absconded, such silence and inaction for the time stated operate as a bar to the prosecution of such offenses. If, however, the State *does* move against the offender within the prescribed time, by presenting an indictment on which a jury is authorized to return a verdict for the particular offense for which the accused has been sentenced, it cannot reasonably be charged that the State has been guilty of the inaction requisite to prescribe against the offense of which the party has been thus convicted. Thus, an indictment for murder charges the highest grade of crime belonging to a certain class of offenses embraced in the generic term " homicide :" under our law, the jury, under such an indictment, is authorized to return a verdict of manslaughter. Therefore, an indictment for murder constitutes in legal intendment a prosecution for manslaughter. The very fact of an indictment for murder being found, where a verdict for manslaughter is rendered, instead of betraying inaction or indifference on the part of the State towards the prosecution of the offender, upon which the theory of prescription is based, shows rather an intense appreciation of the crime and an earnestness and zeal in its prosecution.

It is hard sometimes to draw the line between murder and manslaughter under the evidence in particular cases. The legal distinction may seem very plain—one a killing with malice, and the other a killing without malice—but when reduced to practice it often becomes a problem of difficult solution. This fact is illustrated by the history of this very case now under review. Under this indictment for murder the accused was twice tried. On the first trial he was convicted of murder, and sentenced to imprisonment in the penitentiary for life. On appeal this sentence was reversed on the ground of the admission of illegal evidence, and the cause remanded ; and on the second trial a verdict of manslaughter was returned, which we are now considering.

It is consonant, therefore, both with law and reason, that an indictment for the highest grade of an offense of any distinct class interrupts prescription if seasonably filed, for each lesser grade of the same class for which, under the terms of the law, a jury, may in its discre-

tion, convict. Hence, it follows that an indictment for murder interrupts prescription for manslaughter if filed within a year after the commission of the offense.

By reference to the record we find that the indictment in the instant case was returned on the 17th of June, 1881. The offense was charged to have been committed on the 28th of April, 1881, on which day it is not denied the killing took place. The indictment, therefore, having been found within a year from the commission of the offense, the plea of prescription cannot prevail, and the motion in arrest based solely on such plea must fail.

If we are to understand the further proposition of the defendant's counsel to be, that though the indictment be found within the year, the punishment cannot be inflicted after its expiration; that is, that it is necessary that a party should be indicted, tried and convicted, all within a year, to render a conviction of manslaughter legal, we need only say that such proposition is entirely without force and unwarranted in law.

We have examined the proceedings in this case with exhaustive care and scrutiny, and find nothing that affords the accused any ground of relief.

The sentence appealed from is, therefore, affirmed.