MONROE, J.
A motion for new trial and lull of exceptions present the following ¡grounds for the reversal of a conviction of '.manslaughter, and sentence therefor, from ■which 'the defendant has appealed, to wit: '.That the verdict is contrary to law and the evidence; that the defendant has discovered material evidence since his conviction; that "his counsel did not have sufficient time to prepare his defense; that the jury was guilty of misconduct
1. The allegation in a motion for new trial that the verdict is contrary to law and the evidence, of itself, presents no question which, this court can review. State v. Williams, 107 La. 789, 32 South. 172; State v. Barnes et al., 48 La. Ann. 463, 19 South. 251.
2. Defendant alleges .that he discovered evidence of a material nature which he could not previously obtain for the reason that it has come to his knowledge since the trial, and, by way of specification, further alleges that he can prove by I-Ienry Slaughter that he (Slaughter) saw the deceased coming out of the back door of the saloon kept by defendant’s father, with his right hand in his right hip pocket, and heard him threatening to take the life of defendant; that deceased stepped back a few yards, .drawing his pistol in the meanwhile; that defendant was then standing in said back door, with a pistol in his right hand; that he heard the defendant tell the deceased to put up his pistol and go away, as he (defendaut) desired to have no trouble with him; and that the defendant said to Thurston Kent, who came near the deceased at the time, “I don’t want to hurt him. Take him away;” that deceased, about that time, “while holding his pistol in a downward position, discharged same, and raised it and had it about presented” on defendant when defendant opened fire; and that defendant has learned since the trial that he can prove the same facts by John Dahig, whose affidavit he has, however, been unable, for lack of time, to obtain. Defendant further alleges that he can prove by Gus McLane that the night before the killing, which took place at Pickering, said McLane saw the deceased at Lake Charles, -and that deceased said that he was going to Pickering the next day for the purpose of having trouble, and that he intended to show when he got there, who was the “bully.” It is further alleged that Slaughter and McLane are residents of the parish, and can be obtained as witnesses, should a new trial be granted. These allegations are sworn to by the defendant, and the affidavits of the witnesses named are attached. Slaughter swears that he was a resident of Pickering, and was *73 standing in the door of a house a few yards distant at the time of the homicide, and, after giving the facts within his knowledge, as set forth in the motion, states that immediately after the shooting he went to his home, “seeking at the time to avoid being a witness in the case,” and that he did not thereafter tell any one what he knew until after the defendant had been convicted, when he informed the defendant’s father. The affidavit of McLane also corroborates the allegations of the motion in so far as they relate to the information in his possession.
The judge a quo gives the following, among other, reasons for refusing the new trial, to wit:
“The defendant alleges that the verdict is contrary to the law and the evidence. The jury was an exceptionally intelligent one. I see no reason to reverse their findings; The evidence sought to be secured, of Henry Slaughter and Gus McLane, is merely cumulative. The entire subject on that line was threshed out before the jury. Besides, this case has been pending since last March, and ample opportunity was had to discover the facts surrounding the case, and this evidence was alleged to have been discovered after the trial and conviction. Due diligence has not been shown.”
It appears from the record that the homicide occurred on November 12, 1903; that defendant was not tried until November 2, 1904; and that he was in the meanwhile out on bond. Beyond his general statement that due diligence was exercised to procure “all evidence material to the issue involved,” there is nothing to show what was done during the interval mentioned in that behalf. The general rule is that a new trial will not be granted on the ground of newly discovered evidence when the evidence relied on is merely cumulative to that introduced at the former trial. Ency. PI. & Pr. vol. 14, p. 811. “This rule is generally regarded as inflexible, and not to be violated by the trial judge, although it may appear that the cumulative evidence will change the result, and that a new trial will promote justice. A new trial will not be granted merely because a party can make a stronger case with cumulative-evidence.” Ency. Pl. & Pr. vol. 14, p. 820, citing Sisler v. Shaffer, 43 W. Va. 769, 28 S. E. 721; Conian v. Mead, 172 Ill. 13, 49 N. E. 720. In some jurisdictions it is held that the rule is not inflexible, but that in order to> justify the granting of a new trial the cumulative evidence relied on should be such as to impress the trial judge with a decided belief that, if added to the evidence already introduced, it would be likely to turn the scale in favor of the accused. A. & E. Ency. of Law (2d Ed.) 477; Cyc. vol. 12, p. 740.
In State v. Albert, 109 La. 210, 33 South. 199, the Chief Justice, as the organ of the court, said:
“Where a court refuses a new trial on the ground that the newly discovered evidence offered is merely cumulative, it is tantamount to saying that, were it offered in a new trial, the result of the second trial would not, in its opinion, be different from that of the first.”
As the record in this ease does not contain the evidence heard upon the trial, the opinion of the trial judge upon the question whether the evidence sought to be presented would be merely cumulative thereto, and whether, if heard upon a new trial, it would be likely to bring about a result different from that already arrived at, is necessarily conclusive in this court.
The question of diligence, too, is one the determination of which rests largely within the discretion of the trial judge, whose conclusions thereon will not be disturbed on appeal unless manifestly erroneous. State v. Fisher, 33 La. Ann. 1344; State v. Diskin, 35 La. Ann. 48.
In the instant ease we are not convinced that any error in that respect has been committed.
3. In support of the third ground set forth in the motion and bill, the defendant’s counsel filed their affidavits to the effect that they were employed four or five days before the trial; that one of the firm consulted the record of the preliminary examination, which *75 had been held before the judge who presided at the subsequent trial, and concluded, from the testimony there adduced, and from certain language used by the judge in admitting the defendant to bail, that no criminal liability attached to the defendant, and hence, when the case was called, answered that he was ready for trial, though ho had had no opportunity to consult either the defendant or any of his witnesses, and that during the trial he found that he was not sufficiently familiar with the case to do justice to the defendant, “though he exercised due diligence in preparing therefor.” The record shows that on December 3, 1903, the defendant was charged with the crime of murder, said to have been committed on November 12th; that the preliminary examination was held on December 12th following; and that the trial judge, then acting as a committing magistrate, filed written reasons for his ruling, in which, distinguishing between the evidence necessary to make out a case of probable cause and that necessary to convict, he said:
“If I were acting as a trial judge, as to guilt or innocence, I would acquit the accused, but, only acting as a committing judge, I will have to bind the accused over for investigation before the grand jury. The charge, if anything at all, in my opinion, could only amount to a low grade of manslaughter, occurring under very great provocation.”
And he fixed the amount of the bond at $500. On April 2, 1904, the defendant -was indicted for manslaughter, and upon the same day his bond was declared forfeited. We are, however, informed by his counsel that he subsequently appeared and gave another bond. On April 9th his case was fixed for trial, and a continuance was granted at his request on account of the absence of the counsel who had represented him on the preliminary examination. On April 20th the case was fixed for June 2d, and on the day last mentioned was continued to Octobej25th, when it was fixed for October 31st. .It was not, however, called up until November 2d, and, when called, the accused, being in court, assisted by counsel, though not the same counsel who had appeared for him in the preliminary examination, answered that he was ready, and the trial and conviction followed.
It will thus be seen that nearly a year elapsed between the date of the commission of the crime and that of the trial. The counsel who represented the defendant for the purposes of the preliminary examination seems never to have appeared for him again, and nothing in the record justifies the belief that after the first continuance the defendant had any reason to suppose that he would appear. Defendant had, therefore, ample notice, and time in which to secure other advice, and, if he failed to secure it, he alone was to blamé. According to his own admission, however, he employed other counsel four or five days before that upon which he was to be tried, and, when his case was called, being assisted by the counsel so employed, he announced that he was ready for trial.
His counsel could not have been ignorant of the fact that, notwithstanding the unguarded expression of opinion by the trial judge whilst acting as a committing magistrate, the grand jury had subsequently indicted the defendant; and they might well, therefore, have assumed that the whole case of the state had not been presented on the preliminary examination. Hence their impressions, derived from the investigation made by them, did not constitute a sufficient reason for their failure to prepare for the trial. Nor does it appear that such failure was attributable to actual lack of time, since the allegations of the motion for new trial are that they were busy with other matters,, and were relying upon impressions already formed. Defendant alleges that:
“Acting on the representation made by the court in passing on the evidence in said preliminary examination, your appearer and his attorneys felt, beyond a doubt, that there was *78 no criminal liability on the part of your appear-er, and deemed it unnecessary to ask for further time, but on the trial of said case it was found that there were facts material to the issue that should have been proved, and could have been proved, had your appearer’s attorneys had further time to have looked into the case, as is evidenced by the affidavits of his attorneys,” etc. »
Referring to the affidavits mentioned, we find in the one of them, made by the particular counsel who had charge of the matter, the following: That, upon the trial of said case, deponent found “that there are material facts on behalf of defendant which he (deponent) was unable to develop before the jury, owing to the fact of his recent employment in said case, and not having the necessary witnesses before the court to make clear such facts, which witnesses can now be produced.”
Neither the motion nor the affidavit specify the material facts to which they refer, nor do they mention the names of any witnesses, save those who are said to have been discovered after the trial, and who could not have been available at the trial, because unknown at that time, or, if found, by the exercise of greater diligence on the part of the defendant, would have been available only to give cumulative testimony concerning facts which, according to the opinion of the trial judge, had been sufficiently threshed out.
There is nothing in the record to justify the conclusion that further time would or should have been granted to the defendant, even if he had asked for it; and, considering all that we find, we are not convinced that h'e was prejudiced by his counsel’s lack of preparation. He can therefore obtain no relief on that ground.
4. There was presented in connection with the motion for new trial a certificate, purporting to have been signed by two of the-jurors, to the effect that the jury, in arriving at their verdict, took into consideration the defendant’s previous record, although no evidence on that subject had been offered on the trial. This certificate was properly excluded from the consideration of the court. The testimony, and a fortiori the unsworn certificate, of a juror, is not admissible to impeach the verdict of the jury of which he was a member. The court must derive its knowledge of the misconduct of the jury from some other source than the jurors themselves. State v. Caldwell, 3 La, Ann. 435; State v. Fruge, 28 La. Ann. 657; State v. Beatty, 30 La. Ann. 1266; State v. Price, 37 La. Ann. 215; State v. Bates, 38 La. Ann. 491; State v. Bird; Id. 497; State v. Richmond, 42 La. Ann. 299, 7 South. 459; State v. Corcoran, 50 La. Ann. 453, 23 South. 511.
We find no error in the rulings of the trial court, and the judgment appealed from is therefore affirmed.
PROVOSTY, J., not having heard the argument, takes no part.